**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA**
Plaintiff

v.                                          **Criminal No. 03-002 (DRD)**

**Raymond Serrano**
Defendant

**OPINION & ORDER**

Raymond Serrano (hereinafter "Defendant"), appearing pro se, filed five different motions attacking this Court's judgment, which ordered his incarceration after a finding that he violated the terms of his supervised release. A generous reading of these motions yields three fundamental claims, which are grounded upon many legal provisions.

First, Defendant purports that this Court erred by not staying the revocation proceedings while there were pending charges in the Southern District of Florida. Docket No. 29, pp. 3-7. Second, Defendant avers that the Court similarly erred by presiding over the revocation procedures instead of transferring him to the Southern District of Florida where a district judge of said district would preside over these proceedings. Id. And third, Defendant asseverates that, once the Court revoked his supervised release, he was improperly incarcerated for seven months in Puerto Rico's Metropolitan Detention Center instead of being promptly transferred to the Southern District of Florida to confront the pending charges, which were filed in said district.

As a direct result of these errors, Defendant posits that Federal Rules of Criminal Procedure 5 and 40 and 18 U.S.C. § 3145(a) have each been contravened. Defendant avers that these defalcations resulted in violations to his Fifth Amendment Due Process rights; Sixth Amendment Speedy Trial rights, Sixth Amendment right to be tried in the district where

the crime was committed; and Article III, Section 2, Clause 3 right to be tried in the state where the crime was committed.

In any event, if the Court were to agree that any of these provisions have been infringed, Defendant reasons that he is entitled to the following forms of relief: (I) a finding that the judgment is void under Federal Rule of Civil Procedure 60(b)(4), (II) a judgment on the pleadings in his favor under Federal Rule of Civil Procedure 12(c), (III) a default judgment under Federal Rule of Civil Procedure 55, and/or (IV) a summary judgment under Federal Rule of Civil Procedure 56.

The Government correctly points out that this is a criminal case and argues that each of the forms of relief sought are civil in nature and, therefore, unavailable because the Federal Rules of *Civil* Procedure do not apply.  However, in response to this argument, Defendant requests that the Court, if need be, use its equitable powers to treat these matters as a civil proceeding.

Prior to assessing the claims presented, the Court will begin by discussing the factual and legal background of the instant case.

## I.    FACTUAL AND LEGAL BACKGROUND

The circumstances surrounding this case began in the state of Texas.  On March 30, 2001, Defendant was sentenced in the Northern District of Texas to a thirty (30) month term of imprisonment after being convicted of violating 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).  Docket No. 34, p. 1, ¶ 1.  In addition to the term of imprisonment, Defendant was also sentenced to a three (3) year term of supervised release.  Id.

After serving his term of imprisonment, on December 20, 2002, Defendant was released from the Hogar Crea Halfway House to this district to begin his term of supervised

release.  Id.  It is of paramount importance to emphasize that the *jurisdiction* over Defendant's supervised release was transferred to *this* district: the United States District Court for the District of Puerto Rico.  See Docket No. 1.

While on supervised release, Defendant was subject to, among others, the following conditions: (i) he was prohibited from committing another federal, state, or local crime, which includes illegally possessing a controlled substance; (ii) he was prohibited from leaving this judicial district without permission of the court or probation officer; (iii) he was to report to the probation officer and submit a truthful and complete written report within the first five days of each month; (iv) he was to notify the probation officer ten (10) days prior to any change in residence or seventy-two (72) hours prior to any change in employment; (v) he was prohibited from the excessive use of alcohol and was not to purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician; (vi) he was prohibited from frequenting places where controlled substances are illegally sold, used, distributed, or administered; (vii) he was prohibited from associating with any persons engaged in criminal activity, and was not to associate with any person convicted of a felony unless granted permission to do so by the probation officer; and (viii) he was to notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer. See Docket No. 6.  As it turns out, however, Defendant transgressed every single one of these conditions.

At some undisclosed point in time, Defendant travelled—in direct violation of the terms of supervised release—to Barranquilla, Colombia.  See Id.  Upon reentry into the country, Defendant was arrested in the Miami International Airport for the possession of approximately

1.88 pounds of heroin.   Id.   In an elaborate attempt to smuggle the contraband into this country, Defendant had ingested seventy-one pellets that each contained heroin in a white powdery form.   Id.   Defendant's plan was foiled, however, when customs and border protection subjected him to an x-ray examination.   Id.   Subsequently, after a stint in the hospital, Defendant was formally arrested on April 20, 2004, in the Southern District of Florida.   Id.   Three days later, Defendant was released from custody by the United States District Court for the Southern District of Florida on a $75,000 personal surety bond.   Id.

Once the probation officer became aware of these events, revocation of supervised release proceedings commenced before *this* Court.   On May 7, 2004, the probation officer filed a motion requesting that this Court: (a) hold a show cause hearing as to why Defendant's term of supervised release should not be revoked and (b) issue a summons to Defendant to appear at said hearing.   Docket No. 6.   The Court granted both of these requests by way of an order issued on May 18, 2004.   Docket No. 7.   The summons was issued on May 18, 2004, and returned executed on May 24, 2004.   Docket Nos. 8 and 9. Defendant was appointed representation by the Federal Public Defender's Office on May 27, 2004.   Docket Nos. 10 and 11.   On August 13, 2004, a revocation of supervised release hearing was held.   Defendant, by way of counsel, declined his opportunity to dispute any of the alleged violations to the terms of supervised release.   In the end, the Court revoked Defendant's supervised release and sentenced him to a two-year term of imprisonment for these violations.

## II.   LEGAL ANALYSIS

Although far from being a model of clarity, Defendant's filings have been generously construed by this Court to invoke numerous avenues of relief, which are to be expounded

upon shortly.  However, it is useful to commence by affirming what it is that Defendant does *not* claim or seek.

First, Defendant is adamant that he does not contest this Court's jurisdiction in any way.  See Docket Nos. 36, p. 1, ¶ 1; 50, p. 1, ¶ 1; and 66, p. 1, ¶ 1.  Second, neither does Defendant asseverate that any ineffective assistance of counsel has occurred in the case at bar.  Docket No. 50, p. 2, ¶ 3.  Prior to treating the precise arguments at hand, however, it is useful to begin the analysis by determining whether or not the Federal Rules of Criminal Procedure have been duly complied with.

**A.  Were the Federal Rules of Criminal Procedure Followed?**

Concerned by the possibility of encroaching upon the jurisdictional province of a fellow federal court, this Court has carefully studied the applicable rules of criminal procedure in search of error.  The findings are set forth below.

Defendant avers that Federal Rules of Criminal Procedure 5 and 40 were contravened by this Court.  As will be demonstrated shortly, these particular rules do not apply to the instant fact pattern.  Accordingly, the Court shall scrutinize Rule 32.1, which is the applicable rule, in addition to Rules 5 and 40.

Grasping Defendant's argument requires a careful understanding of what these rules entail.  Thus, the Court begins its excursion by setting forth to describe the pertinent provisions of the aforementioned rules in detail.  Then, the Court shall identify any errors that have occurred.  Once these preliminary steps have been completed, the Court must decide whether any of these errors, or the cumulative effect of these errors, is harmless.  See Fed. R. Crim. P. 52.

Federal Rule of Criminal Procedure 40 offers little in the way of complications.  In its entirety, Rule 40, reads as follows:

> Rule 40. *Arrest* for Failing to Appear in Another District or for Violating Conditions of Release Set in Another District
> **(a) In General.** A person must be taken without unnecessary delay before a magistrate judge in the district of *arrest* if the person has been *arrested* under a warrant issued in another district for:
>> **(i)** failing to appear as required by the terms of that person's release under 18 U.S.C. §§ 3141-3156 or by a subpoena; or
>> **(ii)** violating conditions of release set in another district.
> **(b) Proceedings.** The judge must proceed under Rule 5(c)(3) as applicable.
> **(c) Release or Detention Order.** The judge may modify any previous release or detention order issued in another district, but must state in writing the reasons for doing so.
> **(d) Video Teleconferencing.** Video teleconferencing may be used to conduct an appearance under this rule if the defendant consents.  (emphasis in bold in original; emphasis in italics added).

Fed. R. Crim. P. 40.  It is of critical importance to note that this rule only applies when two preconditions have been satisfied: (1) a person has been "arrested" and (2) said "arrest" was either for failing to appear in another district or for violating the conditions of release set in another district.   However, given that Defendant made his appearance before the Court by way of a summons instead of an arrest, these preconditions cannot be satisfied.  See Docket Nos. 8 and 9.  Hence, contrary to Defendant's assertions, Rule 40 is of no consequence to the instant case; thus, no error could have occurred under this rule.  As such, the Court need move on.

At the risk of oversimplification, Federal Rule of Criminal Procedure 5 governs the temporal proximity, location, and general procedures of an initial appearance.  It is important to observe that Rule 5 applies somewhat differently depending on whether a defendant has made his appearance before the court in response to a summons or whether he was taken before the court after an arrest.  And, at the expense of repetition, it must be reemphasized

that Defendant's appearance before this Court came about by way of a summons—not an arrest.  With this essential fact in mind, the Court now turns to the pertinent provisions of Federal Rule of Criminal Procedure 5.

By its own admission, Rule 5 does not apply to offenders who are "arrested" for "violating probation or supervised release"; on the contrary, Rule 5(a)(2)(B) explicitly cross references Rule 32.1 as the applicable rule.  See Fed. R. Crim. P. 5(a)(2)(B) and 32.1. However, a literal reading of Rule 5(a)(2)(B) would render this "arrest" exception to Rule 5 inapplicable to the case at bar given that Defendant appeared by way of a summons. Notwithstanding, the Court's research will eventually lead to Rule 32.1, albeit for slightly different reasons.  For now, however, the Court continues its discussion of Rule 5.

Moving on to the next relevant Rule 5 provision, Rule 5(a)(3) reads "[w]hen a defendant appears in response to a summons . . . a magistrate judge must proceed under Rule 5(d) or (e), as applicable."  See Fed. R. Crim. P. 5(a)(3).  A literal reading of this particular subsection would appear to make it applicable to the instant case.  It should be noted that this particular provision refers to subsections (d) and (e), which would effectively make these subsections the only other Rule 5 provisions that potentially apply to the case at bar.  Rules 5(d) and (e) are quite similar in nature: Rule 5(d) delineates the initial appearance procedure in a felony case, while Rule 5(e) applies to misdemeanor cases.  However, Defendant does not challenge the Court's handling of these particular Rule 5 provisions.

In summary, a thorough inspection of Rule 5 leads the Court to determine that no applicable provision of the rule stands for the errors touted by Defendant.  Notwithstanding, out of an abundance of caution and for the sake of completeness, the Court shall take a

closer look at the particular provisions of Rule 5 that have been invoked by Defendant.  For the sake of clarity, these provisions are enclosed below:

> **Rule 5. Initial Appearance**
> . . .
> **(c) Place of Initial Appearance; Transfer to Another District.**
> . . .
>> **(3) Procedures in a District Other Than Where the Offense Was Allegedly Committed.** If the initial appearance occurs in a district other than where *the offense* was allegedly committed, the following procedures apply:
> . . .
>>> **(D)** the magistrate judge must transfer the defendant to the district where *the offense* was allegedly committed if:
>>>> **(i)** the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and
>>>> **(ii)** the judge finds that the defendant is the same person named in the indictment, information, or warrant; and
> . . . (emphasis in bold in original; emphasis in italics provided).

Fed. R. Crim. P. 5.  Specifically, Defendant avers that the Court should have transferred him to the Southern District of Florida because that is where "the offense" was allegedly committed and because the Rule 5(c)(3)(D)(i) and (ii) requirements have purportedly been satisfied.

However, this rule was apparently followed—by the Southern District of Florida, which is where the drug-smuggling offense was allegedly committed.   Defendant allegedly committed a drug-smuggling offense in the Miami International Airport, was arrested in the Southern District of Florida, and released on a $75,000 personal surety bond by a federal judge sitting in said district.  While loosely related, the proceeding before *this* Court is quite different from the one held in the Southern District of Florida.  Defendant's challenge in this Court stems from a misunderstanding that this Court is bound by Rule 5 in this revocation of supervised release proceeding.  However, it is Rule 32.1, which is titled "Revoking or Modifying Probation or Supervised Release," that applies to the proceeding before this Court.

Slightly restated, Rule 5 applies to the proceedings before the Southern District of Florida while Rule 32.1 applies to the revocation proceedings before this Court.

In a few words, Rule 32.1 regulates the procedure that is to be followed in order to revoke or modify the conditions of probation or supervised release.  Specifically, Rule 32.1 describes the procedure to be followed when conducting an initial appearance in a proceeding of this nature.  In addition, this rule regulates the procedure to be followed when revoking and/or modifying supervised release.  There are several sections of this rule that merit further inquiry.

Rule 32.1(a)(2) describes how an initial appearance should be carried out when a person appears before the judiciary in response to a summons for violating supervised release.  Specifically, said subsection explicitly states that the Court "must proceed under this rule."  See Fed. R. Crim. P. 32.1(a)(2).  Hence, this is another indication that Rule 5 has no bearing on these proceedings.

Moreover, the fact pattern of the instant case has been specifically contemplated by Rule 32.1(a)(4): "[i]f the person . . . appears in the district that has jurisdiction to conduct a revocation hearing—either originally or by transfer of jurisdiction—the court must proceed under Rule 32.1(b)-(e)."  This is precisely what this Court did: it proceeded under Rule 32.1(b) through (e) as Defendant appeared by way of a summons in this district, which has jurisdiction to conduct a revocation hearing as a result of the transfer of jurisdiction from the Northern District of Texas.  Further, the Court notes that even a liberal interpretation of the errors invoked by Defendant fail to imply any misapplication of Rule 32.1(b) through (e).  Thus, even though Defendant did not expressly invoke any Rule 32.1 error, none of the averred errors could have occurred under this rule anyway.

In the end, the Court has determined that no error has occurred under Federal Rules of Criminal Procedure 5, 32.1, or 40.  Notwithstanding, even if the Court is mistaken and has erred somewhere down the line, any of these procedural defalcations would be unable to escape the "harmless error" label of Rule 52.  See Fed. R. Crim. P. 52.[1]

Having established the germane procedural requisites and determining that they have indeed been followed, Defendant's arguments may finally be scrutinized in their proper light.

## B. Evaluating Defendant's Claims of Error

As previously alluded to, Defendant claims that the Court's failure to stay the revocation proceedings—in light of the pending charges in the Southern District of Florida—constitutes error.  The Court disagrees.  Indeed, the Court is not alone in this sentiment:

> A defendant whose conduct results in both a revocation proceeding and an additional prosecution may be forced to choose between exercising the right to silence at the revocation hearing or risking that his testimony will be used against him at the subsequent prosecution. **The Fifth Amendment does not require a district court to spare a defendant this choice by staying the revocation proceeding until after the new charge is resolved.**  (emphasis provided).

§ 562 Revoking Probation or Supervised Release, 3 Fed. Prac. & Proc. Crim. § 562 (4th ed.); see also United States v. Jones, 299 F.3d 103, 110–111 (2d Cir. 2002).  Moreover, at the revocation hearing, Defendant invoked his right against self-incrimination with regard to only one of the alleged supervised release violations while "admitting" the other seven.  See Docket No. 28, p. 5.  As a consequence of these admissions, the Court was left with no real choice but to find—at least eventually—that Defendant violated the terms of supervised

---

[1] The Court notes that Rule 52 applies to district courts.  See Fed. R. Crim. P. 1(a)(1); § 851 Kinds of Error Distinguished, 3B Fed. Prac. & Proc. Crim. § 851 (4th ed.).  Further, Rule 52 requires that any error "be disregarded" unless it "affect[s] substantial rights."  See Id.  Thus, in order for Defendant to prevail, he will (1) have to persuade the Court that an error occurred and (2) demonstrate that his substantial rights were affected by the error.  Finally, the Court notes that "[t]he reach of Rule 52 is nearly universal, extending to errors under statutory provisions and the Criminal Rules as well as to violations of constitutional provisions."  § 854 The Harmless Error Rule—Application of the Rule, 3B Fed. Prac. & Proc. Crim. § 854 (4th ed.).

release.  In light of this crucial fact, not staying the proceeding would be even less likely to create any constitutional misgivings.  For all of the foregoing reasons, the Court rejects Defendant's first claim of error.

Turning to the second claim of error, Defendant purports that this Court was under the obligation to transfer this proceeding to the Southern District of Florida, which, again, is where the pending drug-smuggling charges were filed.  As previously alluded to, the Court's actions in this respect do not violate any of the Federal Rules of Criminal Procedure.  On the contrary, Rule 32.1(a)(2), (a)(4), and (b)(2) mandate that *this* Court preside over Defendant's revocation hearing.  Consequently, following the procedure set forth in a rule cannot be deemed error.  As such, Defendant's second claim of error must also fail.

Defendant's third and final claim of error is that—after his supervised release was revoked by this Court—he was improperly incarcerated for seven months in Puerto Rico's Metropolitan Detention Center instead of being transferred promptly to a detention center in the Southern District of Florida.  This occurrence allegedly impaired his ability to "fully, fairly and timely prepare for and proceed for trial proceedings in the Southern District of Florida." See Docket Nos. 29, p. 7; 30, p. 2.  However, there is a glaring procedural flaw inherent in this claim that may not be overlooked.  This issue should be alleged in a civil suit and/or a lawsuit under 28 U.S.C. § 2255, not in a criminal case for violating the terms of supervised release.  Accordingly, Defendant's third claim of error must be denied as well.

### III.     CONCLUSION

For each of the foregoing reasons, Defendant's motions at Docket Nos. 29, 37, 38, and 52 must be **DENIED**.  After careful scrutiny, the Court finds that the instant proceeding should not have been stayed or transferred.  Notwithstanding, even if the Court is mistaken,

any such error should be found harmless in light of the circumstances of the instant case.

<u>See</u> Fed. R. Crim. P. 52.[2]   Moreover, the Court finds that Defendant's third claim of error—not being promptly transferred to the Southern District of Florida from Puerto Rico—is a matter to be pursued in a separate lawsuit.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of January, 2016.

/S/ Daniel R. Domínguez
DANIEL R. DOMÍNGUEZ
United States District Judge

---

[2] See footnote one of this Opinion and Order.